UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

JACKIE L. TOWNE,                              )
      *Plaintiff*,                          )
                                           )
*vs.*                                         )
                                           )   1:12-cv-01124-JMS-TAB
CAROLYN W. COLVIN, Acting Commissioner        )
of Social Security,                           )
      *Defendant*.                          )

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Jackie L. Towne applied for Supplemental Security Income Benefits ("SSI")

through the Social Security Administration ("SSA") in October 2009.  [R. 16; dkt. 12-2 at 17.]

After a series of administrative proceedings and appeals, including a hearing in April 2011

before Administrative Law Judge ("ALJ") Kimberly S. Cromer, the Commissioner denied Ms.

Towne's application.  [*Id*.]  The Appeals Council denied Ms. Towne's timely request for review

of the ALJ's decision, [*id*.], rendering that decision the final one for the purposes of judicial

review.  20 C.F.R. § 404.981.  Ms. Towne then filed this action under 42 U.S.C. § 405(g),

requesting that the Court review the ALJ's denial.  [Dkt. 1.]

**I.**

**BACKGROUND**

The pertinent background facts were detailed by Ms. Towne in her opening brief, and

agreed to by the Commissioner, [dkt. 23 at 1, 2].  As the resolution of the issues presented does

not require significant factual development, and because the facts implicate sensitive and

otherwise confidential information concerning Ms. Towne, the Court will simply incorporate

those facts by reference herein.  Specific facts will be articulated as needed.

## II.
### DISCUSSION

This Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's (and ultimately the Commissioner's) findings. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), the Court must afford the ALJ's credibility determinations "considerable deference," overturning them only if they are "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted). If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. Otherwise, the Court must generally remand the matter back to the Social Security Administration for further consideration; only in rare cases can the Court actually order an award of benefits. *See Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

To evaluate a disability claim, an ALJ must use the following five-step inquiry:

(1) [is] the claimant … currently employed, (2) [does] the claimant ha[ve] a severe impairment, (3) [is] the claimant's impairment … one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, …can she perform her past relevant work, and (5) is the claimant … capable of performing any work in the national economy[?]

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted). After Step Three, but before Step Four, the ALJ must determine a claimant's RFC, which represents the claimant's physical and mental abilities considering all of the claimant's impairments. The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work

and, if not, at Step Five to determine whether the claimant can perform other work.  *See* 20 C.F.R. § 416.920(e).

Here, Ms. Towne claims the ALJ committed various errors at Steps Three and Five.  [*See* dkt. 18.]  Specifically, Ms. Towne raises the following four issues: (1) whether the ALJ's Step Three finding regarding disability and equivalence is supported by substantial evidence, [*id.* at 15]; (2) whether the ALJ erred in not calling a medical expert to testify at the hearing and ignored evidence of her fibromyalgia and chronic pain in considering medical equivalence, [*id.* at 20]; (3) whether the ALJ erred in assessing Ms. Towne's credibility, [*id.* at 23]; and (4) whether the ALJ erred at Step Five in questioning the VE at the hearing, [*id*. at 27].  The Court will consider each challenge in turn.

### 1.   Whether Substantial Evidence Supports the ALJ's Step Three Finding

Ms. Towne first contends that the ALJ's findings at Step Three constitute error.  [Dkt. 18 at 15.]  Specifically, Ms. Towne argues that the ALJ: (a) ignored or rejected evidence showing that her condition met or medically equaled Listing 12.04 (Affective Disorders).  *Id.*

As the Commissioner correctly points out, Ms. Towne bore the burden of demonstrating to the ALJ how her impairments meet or equal a listing the requirements of Listing 12.04.  *See Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004).  The Commissioner maintains that the ALJ did not commit error at Step Three with respect to Listing 12.04 because Ms. Towne failed to establish that her impairments meet or medically equal "*all* of the requirements of that listing." [Dkt. 23 at 4 (emphasis in original).]

To meet the requisite level of severity under Listing 12.04, Ms. Towne needed to satisfy the requirements of both Paragraphs A and B of the listing, or of Paragraph C of the listing.

Paragraph A of Listing 12.04 requires, in relevant part, evidence of:

Depressive syndrome characterized by at least four of the following:

> b. Appetite disturbance
> c. Sleep disturbance; or
> …
> e. Decreased energy; or
> …
> g. Difficulty concentrating or thinking; or
> h. Thoughts of suicide; or ….

20 C.F.R., Pt. 404, Subpt. P., App. 1, Listing 12.04.  The Commissioner does not argue that Ms. Towne failed to carry her burden of proof on Paragraph A, and the record demonstrates that she submitted evidence that she was repeatedly diagnosed with major depression, [R. 458, 519; dkt. 12-8 at 81, 142], and her submission of Dr. Osman's psychiatric evaluation further supports that the requirements were met.  [R. 516-519; dkt. 12-8 at 139-142.]

In Paragraph B, Listing 12.04 requires that Ms. Towne show that her mental impairments resulted in at least two of the following:

1. Marked restriction of activities of daily living;
2. Marked difficulties in maintaining social functioning;
3. Marked difficulties in maintaining concentration, persistence, or pace; [or]
4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R., Pt. 404, Subpt. P., App. 1, 12.08  In other words, Paragraph B requires at least two "marked" limitations or one "marked" limitation and repeated episodes of decompensation.  *Id*.

To meet the requisite level of severity under Paragraph C, Ms. Towne needed to show:

[a] medically documented history of a chronic [applicable] disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

*Id.*   The Commissioner maintains that the ALJ did not err in finding that Ms. Towne's impairments did not meet or equal Listing 12.04 because Ms. Towne did not establish that she met the requirements of Paragraph B or Paragraph C.

In arguing that she satisfied her burden of proof under Paragraph B by establishing marked limitations in activities of daily living and social functioning, concentration, persistence or pace, Ms. Towne contends that "Listing 12.04B was proved by [her] GAF of 45, which was within the totally disabled range of 50 and below." [Dkt. 18 at 16.]  She further argues that "[t]he ALJ's refusal to accept the GAF 45 [sic] as evidence of disability was contrary to Seventh Circuit cases which accept GAF assessments as evidence of disability." [*Id.*]  She misapprehends this Circuit's precedent on the significance of a single GAF score.

"[N]owhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (internal citation and quotation marks omitted).   Indeed, the Seventh Circuit has explained that GAF scores "are useful for planning treatment and are measures of both severity and symptoms and functional level[, but b]ecause  the final GAF rating always reflects the worse of the two, the score does not reflect the clinician's opinion of functional capacity." *Id.* (internal citation and quotation marks omitted).  Accordingly, the Court finds unavailing Ms. Towne's arguments that her GAF score was sufficient to satisfy the requirements of Paragraph B.

Ms. Towne also faults the ALJ with not properly considering her psychiatric treatment by Dr. Osman, [dkt. 18 at 16], because the ALJ mistakenly stated that "[she] 'never saw a

psychiatrist,'" [*id.* (quoting R. 21; dkt. 12-2 at 22)].  The Commissioner responds by arguing that the oversight was harmless because nothing in Dr. Osman's notes evidenced satisfaction of Paragraph B or C criteria, and that remanding the matter would be a waste of time and resources [Dkt. 23 at 10.]

In reply, Ms. Towne claims that the mistake "is itself reversible error."  [Dkt. 26 at 5.] She also persists in characterizing a GAF of 45 as definitively establishing "that [Ms. Towne's] functioning is at the totally disabled level," and attempts to distinguish *Denton* by arguing that the claimant in that case had a higher GAF than Ms. Towne.  [Dkt. 26 at 4.]  She then reiterates the language of her initial brief, arguing that "[t]he ALJ's decision must be reversed because it fails to build an accurate and logical bridge from all of her evidence."  [*Id.* at 5.]  The Court is unmoved.

It is a longstanding principle that the Court is not required "to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different decision."  *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989).  Here, Dr. Osman's treatment records do not serve to establish Ms. Towne's satisfaction of either the Paragraph B or Paragraph C criteria, and indeed, nowhere in her briefs does she argue that they do.  Ms. Towne does not point to anything in Dr. Osman's notes that helps her demonstrate that she satisfies all of the requirements of Listing 12.04, but instead limits her two-sentence challenge on this ground to the ALJ's misstatement, arguing that this misstatement alone is reversible error, [*see* dkts. 18; 26]. For the reasons above, the Court disagrees and finds that Ms. Towne's challenge to the ALJ's finding that her impairments do not meet or medically equal Listing 12.04 is without merit. Accordingly, the Court will not remand the matter on that ground.

**2.  The ALJ's Consultation of an Expert's Opinion Regarding Medical Equivalency**

6

Ms. Towne also contends that the ALJ's findings at Step Three constitute error because she should have consulted an additional medical expert ("ME") at the hearing to determine whether Ms. Towne's combined impairments, including her fibromyalgia and chronic pain, were of listings-level severity.  [Dkt. 18 at 20-22.]  In response, the Commissioner argues that the ALJ's findings were supported by substantial evidence in the record and that ME testimony was unnecessary given the evidence already in the record.  [Dkt. 23 at 11-18.]  The Court agrees.

An ALJ must consider an expert's opinion regarding medical equivalency.  *See Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue.").  "However, when the medical evidence in the record is sufficient to make a decision, the ALJ may rely on it alone."  *Dye v. Astrue*, 1:11-cv-000402-TWP-TAB, 2012 WL 4514108, *9 (S.D. Ind. 2012) (citing *Similia v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009)).

Here, the Court first notes that the ALJ did in fact have a medical expert present at the hearing.  All Ms. Towne had to do was ask the ME if the evidence supported equivalency, but she did not.  The ALJ found that the medical evidence and opinions already in the record, in addition to the opinion of Dr. Jilhewar, the testifying medical expert, were sufficient for her to make her decision.  The ALJ expressly considered the opinions of Dr. Kladder and Dr. Horton, who completed Disability Determination and Transmittal Forms, as well as Psychiatric Review Technique Forms.  [R. 87-88, 486-98, 511; dkt. 12-3 at 2-3; dkt. 12-8 at 109-21, 134.]  As the Commissioner correctly asserts, it is well-settled that the signature of a state agency medical consultant on a Disability Determination and Transmittal Form ensures that a physician designated by the Commissioner has considered the question of medical equivalence at the initial and reconsideration levels of review.  *See Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004)

(finding that disability forms completed by state agency physicians conclusively establish that a physician designated by the agency has considered the question of medical equivalence).

While Ms. Towne argues that the ALJ should have consulted an additional expert to testify at her hearing, she cites no authority to support that proposition.  [*See* dkt. 18 at 20-22.] Ms. Towne's argument on the issue is limited to her unsupported assertion that the ALJ relied on her own "layperson's opinion."  [Dkt. 18 at 21.]  As described above, it is undisputed that in determining medical equivalence based on Ms. Towne's combined impairments, including fibromyalgia or chronic pain, the ALJ consulted medical expert opinions, as was required of her, *Barnett*, 381 F.3d at 670.  The decision to use a medical expert is discretionary, *see* 20 C.F.R. § 404.1527(f)(2)(ii), and the Court finds that the ALJ acted within her discretion in not summoning an additional expert besides Dr. Jilhewar to testify at the hearing.  Accordingly, the Court will not remand this matter on that ground.

### 3.  The ALJ's Credibility Determination Regarding Ms. Towne

Ms. Towne also contends that the ALJ's determination of her credibility constituted error. [Dkt. 18 at 23-26.]  Specifically, she claims that the ALJ's consideration of her credibility was done in summary fashion and "irrational" and "perfunctory" as evidenced by the ALJ's inclusion of "boilerplate language" that Ms. Towne's statements were not credible to the extent they are inconsistent with the RFC.  *Id*.  The Commissioner argues in response that the ALJ, in addition to stating the above, reasonably supported and articulated her credibility finding otherwise.  [Dkt. 23 at 18.]

As stated earlier, this Court's review of credibility findings is a limited one.  Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft*, 539 F.3d at 678, the Court must afford the ALJ's credibility determinations "considerable deference," overturning

them only if they are "patently wrong," *Prochaska*, 454 F.3d at 738 (quotations omitted). Further, although the Seventh Circuit has criticized the use of the aforementioned language, it has also explained that "[i]f the ALJ has otherwise explained [her] conclusion adequately, the inclusion of this language can be harmless." *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2010). Such is the case here.

Although Ms. Towne faults the ALJ with using "boilerplate language" in concluding that Ms. Towne's testimony was not "entirely credible," she ignores that the ALJ considered myriad evidence and articulated her reasoning in arriving at the adverse credibility determination. [Dkt. 18 at 23-26.] Specifically, the ALJ considered:

- Ms. Towne's treatment history, finding that she received conservative care for her impairments. [R. 20-22; dkt. 12-2 at 22-23.]

- Ms. Towne's medications, including her being prescribed narcotic pain medication and the lack of any documented side effects from them. [R. 21-22; dkt. 12-2 at 22-23.]

- Objective medical evidence, including the normal to mild examination findings and MRI of Ms. Towne's lower back showing mild degeneration. [R. 21-22; dkt. 12-2 at 22-23.]

- Ms. Mercer's treatment notes that focused primarily on Ms. Towne's situational family problems at home and her disability claim. [R. 21; dkt. 12-2 at 22.]

- The medical opinions of record as well as the opinion of Dr. Jilhewar that supported the ALJ's physical RFC finding [R. 21-22; dkt. 12-2 at 22-23.]

- The fact that Ms. Towne's activities of daily living were relatively good, as established by Ms. Towne's report of daily activities during a consultative psychological exam, and her Step Three finding that Ms. Towne had only mild limitations in this area of functioning, [R. 19, 22; dkt. 12-2 at 20, 23.][1]

---

[1] The Court recognizes that "an ability to engage in 'activities of daily living' need not translate into an ability to work full time," *Spiva v. Astrue*, 628 F.3d 346, 352, and notes that the ALJ's inclusion of this consideration here seems to be limited to her credibility determination regarding Ms. Towne's self-report of her limitations. In any event, Ms. Towne has not challenged the ALJ's consideration of this factor.

Because the ALJ has otherwise explained her credibility determination adequately, the Court finds her inclusion of the aforementioned language harmless, *see Filus*, 694 F.3d at 868, and not "patently wrong." *Prochaska*, 454 F.3d at 738. Therefore, to the extent that Ms. Towne argues that the ALJ's inclusion of the above-discussed language, in itself, constitutes grounds for remand, her arguments are unavailing. Accordingly, the Court will not remand on this ground.

### 4.   Whether Substantial Evidence Supports the ALJ's Step Five Finding

Ms. Towne also contends that the ALJ's findings at Step Five constitute error. Specifically, Ms. Towne argues that the ALJ's questions to the VE "failed to account for the claimant's deficiencies in concentration, persistence or pace. [R. 19; dkt. 12-2 at 20.] In response, the Commissioner argues that Ms. Towne "provides no explanation as to why she believes that the ALJ did not account for any deficiencies in her social functioning" and that her "undeveloped argument should be deemed waived," [dkt. 23 at 23 (citing *Erhart*, 969 F.2d at 537 n.5 and *Dunkel*, 927 F.2d at 956)].

While the Court agrees that Ms. Towne's discussion of the challenge is skeletal enough to be deemed waived, the Court prefers to resolve arguments on their merits, and will nevertheless consider whether the ALJ properly questioned the VE as to Ms. Towne's deficiencies in concentration, persistence or pace. A review of the ALJ's opinion makes clear that she did.

The ALJ's hypothetical question specifically referred to Ms. Towne's moderate limitations in concentration, persistence, and pace. [R. 78-81; dkt. 12-2 at 79-82.] Having found that Ms. Towne was moderately limited in concentration, persistence, and pace at Step Three, [R. 19; dkt. 12-2 at 20], the ALJ posed the following question to the VE:

> If I considered an individual that has mild activities of daily living, moderate social interaction, and moderate concentration, persistence and pace, we look at

> an individual capable of performing simple, routine, repetitive type tasks, that being an individual who could perform 1, 2, 3, 4, step type jobs in a low stress environment as defined as only occasional decision making, only occasional changes in work setting [sic]. I'm looking at the moderate limitation on social, we're looking at an individual who can only occasionally interact with the public, occasionally interact with supervisors and coworker [sic].

[R. 78-81; dkt. 12-2 at 79-82.]   In response to her question, the VE identified several representative unskilled, sedentary jobs that could be performed by someone with these and the physical limitations the ALJ earlier described.  [*Id*.]  In reply Ms. Towne attempts to analogize the ALJ's question to that of the ALJ in *Yost v. Astrue*, 2012 WL 2814373 (N.D. Ill. 2012).  In *Yost,* the district court reversed the ALJ's denial decision for impermissibly attempting to account for deficiencies in concentration, persistence, or pace by limiting the claimant to simple, unskilled work.  Ms. Towne's reliance on *Yost* is misplaced.  The present case is easily distinguishable from *Yost* because the ALJ here never used the term "unskilled" to account for those deficiencies; rather she explicitly included moderate limitations in those areas within her questioning of the VE, who in turn identified unskilled jobs that were appropriate for such a person given those mental impairments and the physical impairments incorporated from earlier, [R. 78-81; dkt. 12-2 at 79-82].

A review of the record makes clear that the ALJ properly questioned the VE as to Ms. Towne's deficiencies in concentration, persistence or pace.  Accordingly, the Court will not remand on that ground.

### III.
### CONCLUSION

The standard for disability claims under the Social Security Act is stringent.  "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments

and for whom working is difficult and painful." *Williams-Overstreet v. Astrue*, 364 Fed. Appx. 271, 274 (7th Cir. 2010). Furthermore, the standard of review of the Commissioner's denial of benefits is narrow. *Id.* Taken together, the Court can find no legal basis raised by Ms. Towne for overturning the ALJ's determination that Ms. Towne does not qualify for disability benefits. Final judgment will issue accordingly.

08/16/2013

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**<u>Distribution via ECF only:</u>**

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov